## THE PEOPLE a. BORGES.

*Court of General Sessions of City of New York; March,* 1858.

FELONY.—COMMON GAMBLER.—REQUISITES OF INDICTMENT.

A penal statute that prescribes punishment, in the discretion of the court, by imprisonment in either the penitentiary or the state prison, and by a fine, is not void because in many of the counties of the State there is no penitentiary.

Whether it might render the statute inoperative in those counties,—*Query ?'*

Where a statute prescribes, as a punishment for an offence, imprisonment in a state prison, although, in the discretion of the magistrate, a lesser punishment may be inflicted, the offence becomes a felony, unless its grade of crime is otherwise specifically declared by statute. But such a declaration—*e. g.,* that an offence, punishable by imprisonment in the state prison, was a misdemeanor only— must be clear and explicit in the statute, and not drawn, by way of argument, from general expressions.

The words "common gambler," in the act of 1851 (*Laws of* 1851, 943), and the act of 1857 (*Laws of* 1857, 204, § 9), defined.

A violation of the statute of 1851 is a felony, notwithstanding that, by the statute of 1857, a common gambler may be, in certain cases, convicted of misdemeanor.

The statute against the sale of lottery policies is not void or inoperative because it describes them merely as " what are commonly known as, or are called, lottery policies."

Of the requisites of an indictment for offences created by statute.

Motion to quash indictment.

The facts sufficiently appear in the opinion.

BARNARD, Recorder.—The indictment in this case was found under the law passed in 1851 (*Laws of* 1851, 943), and amended in 1855 (*Laws of* 1855, 323), entitled " An act more effectually to suppress Gambling."

The motion to quash the indictment was made before me on the last day of the February term of this court. I had intended within a few days thereafter to have announced the decision, but have been delayed up to the present time in consequence of the numerous pressing duties incidental to the office of a judge of this court.

The motion was founded on the following grounds:

I. That the act of 1851, as amended, is inoperative, because that portion of the punishment prescribed by it, which consists of imprisonment in the penitentiary, cannot be carried out in all

the counties of this State, inasmuch as there are not peniten-tiaries in each of the counties.

II. That the offence charged being a misdemeanor, belongs to the jurisdiction of the Special Sessions, unless the Court of Gen-eral Sessions acquires it, as pointed out by the act of 1851 as amended. ·

III. That the statute is null, because it does not define what a lottery policy is.

IV. That the indictment is bad, in that it alleges a single act of selling.

V. That the indictment is bad for not showing what kind of a lottery was meant by the policy in question.

VI. Either the ticket should plainly show on its face its mean-ing, or it should be explained by explanatory averments in the indictment.

As to the first ground, an act may be inoperative, though not void. If the legislature had directed the punishment to be by imprisonment in some place of confinement which had no exist-ence in the State, the act might be inoperative until such place of confinement should be provided (unless it were by section 55 of the statute, 2 *Rev. Stats.*, 881, § 55, *4th ed.*), but it would not be void. It would be inoperative simply because no punishment could be inflicted; and the moment the cause of the act being inoperative was removed, vitality would be infused into it. Under such circumstances as these, it would seem that the law may be operative in some counties and inoperative in others. The case in hand, however, differs from the one above put, for the acts in question prescribe a punishment in the discretion of the court, which shall be by confinement in either the peniten-tiary or state prison, and by a fine not exceeding $1000. There is, therefore, a punishment which can be inflicted throughout the state, namely, imprisonment in the state prison, and a fine; such being the case, I think the law neither void nor inoperative.

It has been suggested that the prisoner is entitled to have the benefit of all the various grades of punishment which the act mentions; so that if his offence is of such a character as to require less than imprisonment in the state prison, he might be sent to the penitentiary. The degree of the punishment to be inflicted rests, however, entirely in the discretion of the court; and a case may never occur in which the court will deem the

proper punishment to be imprisonment in the penitentiary; and, at the time when such case does arise, there may be a penitentiary or penitentiaries provided, to which offenders may be sent from every county, as there is one now provided for the city and county of New York. If, indeed, such a case should occur before such general provision is made, then it would become a question whether the prisoner could not, as a matter of right, demand a suspension of judgment in all counties, or at least in those counties with respect to which no penitentiary had in any manner been provided. The suggestion could, at all events, be very properly urged, and would, doubtless, have a controlling effect in inducing the court, in such case, to suspend judgment in those counties from which the offender could not be sent to a penitentiary; and in those counties from which he could be sent to a penitentiary, either to suspend judgment, or greatly to reduce the term of imprisonment.

The conclusion I have arrived at is, that the point is not well taken.

As to the second ground, the question is whether the offence charged is a felony or a misdemeanor.

If a felony, it is conceded that this court has original jurisdiction. A felony is a crime which may be punished either by death or imprisonment in a state prison (*Barb. Cr. Law*, 18; The People *v.* Hall (Ms.), decided by Judge Capron while city judge, 2 *Rev. Stats.*, p. 702, § 30). It follows that where a statute creating an offence provides, as a punishment therefor, imprisonment in a state prison, although in the discretion of the magistrate lesser punishment may be inflicted, then that offence becomes a felony, unless its grade of crime is specifically declared in the statute. Thus, if in a statute a crime is declared to be a misdemeanor, that would be its grade, although the punishment should be imprisonment in a state prison; but this declaration must be clear and explicit in the statute, and not drawn, by way of argument, from general expressions used. Now, the statute in question does prescribe as a punishment such imprisonment in a state prison, and does not declare in specific and express terms the grade of crime to which the offence should belong.

In my judgment, therefore, the offence is a felony, unless the words "shall be taken and held to be a common gambler" are

sufficient to mark it as a misdemeanor. Upon this point, it has been urged by the counsel for the defendant, in another case, that the Metropolitan Police Act (*Laws of* 1857, 204, § 9) has declared common gambling to be a misdemeanor, and, by argument, transferring that declaration to the act of 1851, as amended, proclaims that the last-mentioned act should be read as if the word misdemeanor was substituted in the place of the words " taken and held as a common gambler." This, I think, cannot be done, for the reasons above mentioned. And again, I do not understand the provisions of the Metropolitan Police Act to go to the extent claimed. Those provisions are directed against " a common gaming-house or cock-pit," and direct that, if there should be probable cause for believing that any of the persons who might be found in any house kept for such purposes were so in such house for the purposes of gaming, then the magistrate should order such persons, when brought before him, to find bail to appear at a proper criminal court, having jurisdiction to try misdemeanors, to answer any indictment that may be found, charging them with being common gamblers. That if the jury should be satisfied that the premises in which such persons were arrested were kept for the purposes of gaming, and that such persons were present for the purposes of gaming, then such persons might be convicted as common gamblers; and if convicted as such common gamblers, then the court should forthwith sentence them as for misdemeanors. These provisions apply only to persons found in a common gaming-house or cock-pit. The statute declares expressly that the offence therein contained shall be a misdemeanor, although they had previously said that the person should be convicted as a common gambler.

The sense of the legislature was necessary to fix the grade in the scale of crime to which that offence should belong. It does not say, nor is the purport of it, that all common gamblers shall be convicted as of misdemeanors only, nor that the crime of common gambling shall be in all cases a simple misdemeanor, but merely that that specific offence shall be of that grade of crime.

I regard the words " common gambler," as used in both these acts, as being simply a general nomenclature under which to class and designate persons guilty of various specific offences, and not as having any bearing upon the punishment to which

the offenders may be subjected, or degree of crime to which the offences belong. I shall, therefore, hold that the offence charged in the indictment is a felony ; but even if it were a misdemeanor, both of the judges of this court have held that this court has original jurisdiction over misdemeanors, and this doctrine must continue to be the law of the court until reviewed by some higher tribunal. This ground, therefore, for both of these reasons, must be overruled.

As to the third ground, the legislature can undoubtedly make the performance of an act criminal which before was innocent, provided there is no interference with any constitutional provisions.

It has not been urged before me that the prohibition in question does interfere with any constitutional provision, and I therefore assume that it does not. Now, the prohibition in the act is against " selling or vending what are commonly known as or are called lottery policies." To sustain an indictment for this offence, it is not necessary to prove that the paper or thing sold is in fact a lottery policy, but to prove that it is commonly known as or called such, and is solely a question of fact for the jury to pass upon. The intention of the Legislature was to avoid so close and minute a definition, as to give opportunities to evade the law by changes of form and not of substance. The statute is against the selling of a certain thing ; this presupposes a present or contingent value in the thing sold, or that the thing sold may either certainly, or upon the happening of some event, enable the purchaser to procure something of value. The fact of the sale is rendered, by the statute, a component part of the offence. Both the vendor and the vendee must surely know what the subject of sale is, and what it is usually and commonly designated.

The act in question, therefore, seems to me to be definite and certain enough.

As to the fourth ground, I shall hold that a single act of selling subjects the vendor to a prosecution under the act as amended, deeming that (if I am correct in the foregoing rulings) to be clearly the proper construction to be put on the provisions contained therein. As to the fifth ground, it is not necessary to allege any thing about the lottery with which the policy is connected, or upon which it is drawn. In The People *v.* Taylor

(3 *Den.*, 91), cited by counsel for defendant, one point raised was, that the several counts in the indictment were bad for want of a precise statement and particular description of the offences intended to be proved. The indictment was framed upon the 27th section of the Lottery Act (1 *Rev. Stats.*, 665). Bronson, Chief-justice, in his opinion, says: " It is a general, though not universal rule, that, in indictments for offences created by statute, particularly misdemeanors, it is sufficient to charge or describe the offence in the words of the statute," and cites numerous authorities to this point. The weight of the authority referred to, and cited by the learned judge, is, that in an indictment for selling lottery tickets, it is not necessary to give any description whatever, either of the ticket or the lottery.

The learned judge, however, in pronouncing upon the general rules of pleading (page 95), was of opinion that there should be such certainty of description as would identify the offence, so that the party might not be indicted for one thing and tried for another; that the defendant might know what crime he was called on to answer; that the jury might be able to deliver an intelligible verdict, and the court to render a proper judgment; and finally, that the defendant might be able to plead his conviction or acquittal in bar of another prosecution for the same offence; but that such rule should not be carried so far as to furnish a shield from punishment, where it was plain that an offence had been committed. These views led the court to decide that all the counts but the second in that indictment were insufficient.

These views are undoubtedly correct, and should always, in considering the sufficiency of an indictment, be borne in mind, and taken into consideration with the principle that, in indictments created by statute, it is generally sufficient to charge the offence in the words of the statute.

The indictment in this case is not only drawn in the precise language of the statute, but it charges that the defendant on a specific day, at the city of New York, sold to an individual named, a piece of paper with certain specific letters and figures on it, and that such piece of paper was commonly known as, and called, a lottery policy. This constitutes the substance of the offence, and it cannot, I think, be reasonably doubted, but

The People *a.* Borges.

that it is perfectly intelligible, and gives the defendant accurate and precise information of the charge against him ; that the defendant would be able to plead his conviction or acquittal in bar of another prosecution for the same offence.    Tested, therefore, by the principles of the above case of The People *v.* Taylor, the indictment in question is amply sufficient.

The defence cited the case of The People *v.* Payne (3 *Den.*, 88), and the case of The People *v.* Taylor (3 *Ib.*, 99).

The case of The People *v.* Payne was decided in reference to an indictment drawn under the 27th section of the statute against raffling and lotteries (1 *Rev. Stats.*, 665), which provides that no person, unauthorized by special laws for that purpose, shall open, &c., publicly or privately, any lottery, &c., *for the purpose of exposing, setting to sale, or disposing of any house, lands, tenements, or real estate, or any money, goods, or things in action.*    None of the counts in that indictment set forth for what purpose the lottery, on which the tickets with the sale whereof the defendant was charged, was drawn.    The indictment, therefore, did not charge any offence created by the statute, and the motion to quash was consequently properly granted. The principle of that case is not applicable to this.

The points raised in The People *v.* Taylor were, that the indictment was bad; because,

*First :* It did not set out the tenor of the ticket.

*Second :* It did not state to whom the tickets were sold.

In the case in question the ticket is set out, and the name of the person to whom it was sold is given.    Consequently any thing contained in the opinion of the judge, given in this case, cannot be authoritative on any of the points of the case in hand.

As to the sixth ground, the objection therein raised is embraced in and covered by the decision heretofore given on the other points.

His honor the city judge has also examined the various propositions raised by defendant's counsel, and concurs in the conclusions at which I have arrived,

The motion to quash the indictment must, therefore, be overruled, and the defendant stand his trial for the offence charged in the indictment.